UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                                  :

ANGELA DEL VILLAR,                                  :

                                        Plaintiff,      :

                                                               :      19-CV-10891 (JMF)
                               -v-                            :
                                                                :      OPINION AND ORDER

HYATT HOTEL CORPORATION et al.,     :

                                    Defendants.   :

-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Angela Del Villar, a Hispanic woman who worked for Defendant Hyatt Hotel Corporation, alleges that Defendant Neil Francois, who used to work at Hyatt as well, sexually harassed her for several years and that Hyatt wrongfully discriminated against her in violation of federal, state, and local law. More specifically, Del Villar brings hostile work environment, discrimination, and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. ("NYCHRL"). Hyatt — and Hyatt alone — now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment, arguing that Del Villar's use of the n-word in conversation with Francois provided legitimate, nondiscriminatory and nonretaliatory grounds for its employment actions with respect to her and that there is no basis to impute Francois's sexual harassment to Hyatt. For the reasons that follow, the Court agrees and thus GRANTS Hyatt's motion for summary judgment.

**BACKGROUND**

Two preliminary matters warrant brief discussion before turning to the relevant facts. First, as discussed below, Hyatt initially terminated both Francois and Del Villar, who then challenged their terminations, pursuant to a collective bargaining agreement, in arbitration. The arbitrator made detailed findings in determining whether Hyatt was entitled to terminate each employee due to their alleged misconduct — most notably, that Francois sexually harassed Del Villar, that Del Villar did use the n-word, and that Hyatt's termination of Del Villar was unwarranted. Hyatt argues that this Court should adopt many of the arbitrator's findings of fact because "the arbitration determination has all the indicia of collateral estoppel." ECF No. 69 ("Def.'s Mem."), at 14. Del Villar similarly argues that the arbitrator's "finding that [her] discharge was unwarranted" is "binding" on this Court. ECF No. 73 ("Pl.'s Opp'n"), at 2, 10. But the Second Circuit has held that factual findings from contractual arbitration should not necessarily be given preclusive effect in the adjudication of statutory claims. *See Siddiqua v. New York State Dep't of Health*, 642 F. App'x 68, 71 (2d Cir. 2016) (summary order) (finding that arbitration regarding an employee's contractual rights under the terms of a collective bargaining agreement did not bar her subsequent suit pursuant to the Family Medical Leave Act ("FMLA") and that "this prior arbitration does not preclude a federal court from reconsidering all factual issues underlying her statutory FMLA claims"); *see also Miller v. City of Ithaca*, No. 10-CV-597 (BKS) (ML), 2019 WL 5883697, at *5-6 (N.D.N.Y. Nov. 12, 2019) (citing cases). Instead, most courts in this Circuit have "held that arbitration findings amount[] to probative evidence in support of summary judgment on discrimination and retaliation claims." *Miller*, 2019 WL 5883697, at *6; *see also Collins v. New York City Transit Auth.*, 305 F.3d 113, 119-20 (2d Cir. 2002). The Court will treat the arbitrator's findings accordingly.

Second, Del Villar did not submit a statement of material facts in connection with her opposition, and many of her denials of Hyatt's statements of fact are not supported by any citation to the record or are supported by citations that do not actually support the denial. In accordance with Local Civil Rule 56.1, any facts that are denied without an accurate citation to admissible evidence are deemed admitted. *See* Local Civil Rule 56.1 (d) ("Each statement by the . . . opponent pursuant to Rule 56.1 . . ., including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible"); *see also e.g.*, *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012) (disregarding the plaintiff's responses to the defendant's Local Rule 56.1 statement where the plaintiff "fail[ed] to support many of [her] purported denials with any citations to admissible evidence or with citations to evidence that actually support her contentions" (citing cases)). Moreover, responses such as "this statement is not a material fact," *see, e.g.*, ECF No. 73-1 ("SOF"), ¶¶ 2, 7-10, 12, 16-17, 32, 49, 53, or "[t]his statement is subject to clarification," *see, e.g.*, SOF ¶ 56, "do not function as denials, and will be deemed admissions of the stated facts," *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011). Finally, Del Villar is not permitted to introduce new material facts in her responses, which she repeatedly attempts to do. Instead, "if necessary," a party opposing summary judgment may submit "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b).

With that, the Court turns to the relevant facts, which are drawn from the admissible materials submitted by the parties in connection with Hyatt's motion and are either undisputed or described in the light most favorable to Del Villar. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011). Del Villar, a Hispanic woman, was hired as a room attendant at the Hyatt

Centric Times Square New York, a high-rise hotel located in Manhattan, in or about October 2013. SOF ¶¶ 1-2, 10. In that role, she was responsible for cleaning the guest rooms and was part of the housekeeping department. *Id.* ¶ 10-11. Francois, a Black man, had been hired a few months earlier and worked in Hyatt's engineering department, responsible for making repairs to guest rooms, including plumbing, equipment, and HVAC repairs. *Id.* ¶ 12. Francois was also a union delegate responsible for representing the interests of the unionized, non-supervisory employees within the engineering department. *Id.* ¶ 17. For several years, Francois sexually harassed Del Villar by, among other things, making inappropriate comments about her body and attempting to kiss her and grab her from behind while she was cleaning the guest rooms assigned to her. ECF No. 68-2, at 1-157 ("Del Villar Tr."), at 57-60.

On July 10, 2018, Francois came up from behind Del Villar while she was working and led her into a utility closet, where he "forcefully embraced her and tried to kiss her"; Del Villar pushed him away and quickly left the closet. ECF No. 68-2, at 454-59 ("Del Villar Arb."), at 1; SOF ¶ 32; Del Villar Tr. 59. Two days later, on July 12, 2018, Francois, Del Villar and other room attendants were talking in the hotel cafeteria. SOF ¶ 20. During that conversation, Francois referred to Del Villar and the other room attendants as "blue shirts," a reference to the color of their uniforms that Del Villar and the other room attendants apparently found to be offensive and degrading. SOF ¶ 20; *see also* ECF No. 68-3, at 119 (human resources notes from Francois's complaint on July 12, 2018); ECF No. 68-3, at 127-28 (notes from interview of Del Villar conducted by human resources on July 12, 2018); Del Villar Arb. 2. Del Villar told him to stop calling her that, to which Francois replied that it would not bother him if she were to call

4

him a "black shirt" because that was the color of his uniform. *Id.* She then responded: "[Y]ou wouldn't like it if I called you [n-word], but I don't." *Id.*[1]

Francois went directly to Del Villar's supervisor and reported her use of the n-word. SOF ¶ 23. The supervisor directed Francois to Hyatt's human resources department, where he was interviewed by a human resources manager and the director of the engineering department. SOF ¶ 24. Hyatt began investigating his complaint that day, which included interviews with Del Villar and two of her colleagues. *Id.* ¶¶ 25-26. During the interview, Del Villar reported — for the first time — Francois's ongoing sexual harassment. *Id.* ¶¶ 29-30. In response, Hyatt immediately commenced a separate investigation into Francois's alleged misconduct, which included reviewing surveillance video footage and interviewing potential witnesses. *Id.* ¶ 31; *see*

---

[1]  In her memorandum of law and responses to Hyatt's Local Rule 56.1 Statement, Del Villar denies having used the n-word. *See* Pl.'s Opp'n 10; SOF ¶¶ 21-22. But the citation to the record that she provides — to page 84 of her deposition transcript, *see* SOF ¶ 21 — does not substantiate this denial. In fact, in that section of her deposition, Del Villar provides the same account that she has maintained at every stage of this dispute. When asked if she had called Francois the n-word, she answered: "I didn't say the word *like that* . . . . I said, How would you feel if they called you that word. But I did not call him that word." Del Villar Tr. 84 (emphasis added). This testimony is consistent with the report Del Villar provided during her initial interview with human resources on the date of the incident. According to contemporaneous notes taken by human resources personnel, Del Villar explained that Francois had used the term "blue shirt and I told [him,] you don't like it if I call you [n-word] . . . I have my name, that's not my name. You don't like it if I call you [n-word] right? And that's it," but that "I didn't call him [n-word], I said you don't like if I call you [n-word]. I didn't tell Neil [Francois] you're [n-word]." ECF No. 68-3, at 127-28. Del Villar's testimony in the arbitration proceedings was similar. After the hearing, the arbitrator stated that Del Villar "candidly admitted using the word [n-word] in her conversation with Francois," but that "the word was not used as a racial epithet to describe Francois. Rather, she used the word in speaking with Francois, an African American, to illustrate that when the room attendants are called blue shirts, it evokes the same feelings among them as when an African American is called a [n-word]." Del Villar Arb. 3; *see also* ECF No. 68-2, at 466-68 ("Del Villar Supp. Arb."), at 2 (second arbitration award, finding that Del Villar "uttered the words in question to illustrate that she and the other room attendants, when called 'blue shirts,' (which was perceived by most of them as denigrating or demeaning), felt as offended as an African American who is called a [n-word]"). In light of the foregoing, and in the absence of any admissible evidence to support Del Villar's newfound denial, the Court concludes that it is uncontested that Del Villar used the n-word.

*also* Exhibit S (security camera footage).  Hyatt's investigations substantiated both complaints and, on July 16, 2018, Hyatt terminated Del Villar's employment because of her use of a racial epithet at work.  *Id.* ¶ 27.  On July 17, 2018, Hyatt suspended Francois and, two days later, terminated his employment on the basis of Del Villar's complaint about sexual harassment and the video footage that substantiated it.  *Id.* ¶¶ 34, 37.

Del Villar and Francois both challenged their terminations through an official grievance and arbitration process.  *Id.* ¶ 39.  On August 9, 2018, an arbitration hearing was held regarding Francois's termination.  *Id.* ¶ 40; *see* ECF No. 68-2, at 461-64 ("Francois Arb.").  Del Villar was present, with counsel, and had the opportunity to cross-examine Francois.  SOF ¶ 40.  After the hearing, in a written decision, the arbitrator credited Del Villar's testimony about the ongoing harassment, finding that it had the "ring of truth," and upheld Francois's termination.  Francois Arb. 2, 4.  On April 16, 2019, Del Villar's arbitration hearing was held.  SOF ¶ 42.  The same arbitrator again credited Del Villar's version of events, finding that, as described above, she had used the n-word in the interaction, but not as a slur directed at Francois; instead, "inartfully and regrettably, she used the word [n-word] to illustrate to Francois that the room attendants felt as offended by Francois calling them blue shirts as an African American feels when he or she is called a [n-word]."  Del Villar Arb. 4.  Based on that distinction, as well as the fact that she had worked at Hyatt for ten years without any previous discipline or similar conduct, and "in light of the high level of stress she was working under due to Francois's relentless sexual harassment," the arbitrator found that "her discharge was unwarranted."  *Id.* at 4-5.  Hyatt put Del Villar on paid suspension pending reconsideration.  SOF ¶ 46.  On August 7, 2019, following an additional hearing conducted on July 24, 2019, in which Hyatt argued, *inter alia*, that the previous award had been unjust because it failed to "impose any corrective action upon" Del Villar, the arbitrator

6

concluded that Del Villar's conduct justified a one-month unpaid suspension.  Del Villar Supp. Arb. 2-3.  Specifically, the arbitrator found that "some corrective action [was] warranted" in order to "send[] a message that, whatever the circumstances, uttering racial epithets at work will not be tolerated."  *Id.* at 3.  Accordingly, Del Villar was reinstated with eight months of backpay, including a pay raise, and benefits.  SOF ¶¶ 48-49.

## APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  Such a dispute qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  Critically, however, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters stated."  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)). Notably, the Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often disputed. *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) (summary order) (internal quotation marks omitted).  Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  Indeed, just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up).  That is, a "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more

8

likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (cleaned up).

## DISCUSSION

As noted, Del Villar brings hostile work environment, discrimination, and retaliation claims under Title VII, the NYSHRL, and the NYCHRL.[2] The Court will begin with her hostile work environment claims and then turn to her discrimination and retaliation claims.

### A. Hostile Work Environment Claims

To establish a hostile work environment claim under Title VII or the NYSHRL, a plaintiff "must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019) (internal quotation marks omitted); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard.").[3] The relevant standard under the NYCHRL, meanwhile, "is lower." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011); *accord Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108-

---

[2] Del Villar also brings sexual harassment claims. But, at least as to Hyatt, these claims are based on a theory of "hostile work environment due to sexual harassment." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (distinguishing such claims from "claims based on direct discrimination (also called *quid pro quo* sexual harassment)"). Accordingly, "her hostile work environment and sexual harassment claims [can and] will be analyzed together." *Id.*; *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

[3] New York amended the NYSHRL in August 2019, changing the relevant standard, but courts in this District have held that the amendment is not retroactive and, thus, applies only to conduct that took place after its effective date, August 12, 2019. *See, e.g.*, *McHenry v. Fox News Net., LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (citing cases). Accordingly, the pre-amendment version of the NYSHRL applies to Del Villar's NYSHRL claims.

09 (2d Cir. 2013). To survive summary judgment, a plaintiff "need only adduce evidence of the existence of unwanted gender-based conduct." *Bermudez*, 783 F. Supp. 2d at 579 (internal quotation marks omitted). Under the NYCHRL, "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009).

Significantly, however, "[b]eyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer" in order to hold the employer liable under Title VII, the NYSHRL, or the NYCHRL. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010); *see, e.g.*, *Torres v. City of New York*, No. 18-CV-3644 (LGS), 2019 WL 1765223, at *5 (S.D.N.Y. Apr. 22, 2019). Under Title VII and the NYSHRL, where the plaintiff alleges misconduct by a co-worker rather than a supervisor, the employer is liable "only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). In particular, "the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013). Under the NYCHRL, the standard for imputing liability to an employer is even "more rigorous." *Torres*, 2019 WL 1765223, at *5. In particular, an employer will be held liable under the NYCHRL for the discriminatory acts of nonsupervisory co-workers only if "the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action." N.Y.C. Admin. Code § 8-107(13)(b). Further, "an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where the conduct was known by another employee or agent who exercised managerial or supervisory

responsibility; or the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct." *Id.*

For the purposes of this motion, Hyatt does not contest that Del Villar was subjected to a hostile work environment because of Francois's conduct. Def.'s Mem. 19 n.2. Instead, Hyatt contends that it cannot be held liable for Francois's conduct. In arguing otherwise, Del Villar advances several theories. None is persuasive.

First, Del Villar alleges that Hyatt did not provide a reasonable avenue for complaint because it "failed to adequately disseminate and translate its employee handbook." Pl.'s Opp'n 17. But it is undisputed that Del Villar was provided with a copy of the policy against discrimination and reporting procedures *and* signed a written acknowledgment of such receipt. SOF ¶ 6; *see* ECF No. 68-1, at 37-38 (Del Villar's acknowledgment of receipt of Hyatt's policies); *see also id.* at 40-41 (Francois's acknowledgment of receipt). Courts often find such evidence, standing alone, sufficient to establish a reasonable avenue of complaint. *See, e.g.*, *Fornah v. Cargo Airport Servs., LLC*, No. 12-CV-3638 (RER), 2014 WL 25570, at *8 (E.D.N.Y. Jan. 2, 2014) (finding that where the plaintiff had received a copy of the workplace discrimination policy and "signed a written acknowledgment of receipt for it . . . there [was] no genuine issue of material fact as to whether [the d]efendant provided [the p]laintiff with a reasonable avenue of complaint"). In the face of this evidence, Del Villar asserts that she was unable to read the policy because it was distributed only in English. *See* Pl.'s Opp'n 17. Even so, however, "a court may still find, as a matter of law, that an employer provided a 'reasonable avenue of complaint' if the evidence shows that the plaintiff in fact knew how to make a complaint and that the complaint was adequately addressed." *McArdle v. Arms Acres, Inc.*, No. 03-CV-05721 (PGG), 2009 WL 755287, at *8 (S.D.N.Y. Mar. 23, 2009) (citing cases). That is

the case here. Del Villar admits that she was "aware of the Hotel's policy against discrimination and the reporting procedures[ and had] received training on the policy," SOF ¶ 6, and agreed at her deposition that she had "an understanding that Hyatt's policy prohibited discrimination," Del Villar Tr. 42. It is also undisputed that as soon as Del Villar made her complaint to human resources, Hyatt commenced an investigation and promptly terminated Francois's employment. SOF ¶¶ 31-38; *see, e.g.*, *Borrero v. Collins Bldg. Servs., Inc.*, No. 01-CV-6885 (AGS), 2002 WL 31415511, at *12 (S.D.N.Y. Oct. 25, 2002). And in any event, Del Villar plainly understood that she could have complained earlier because, on her own account, she had threatened to report Francois to human resources several times and, each time, Francois's harassment "stopped for about two months, more or less," before starting up again. Del Villar Tr. 75-76; *see also id.* at 74 (Del Villar testifying that, during the videotaped assault, she told Francois, "Let me go, let me go, . . . otherwise, I'm going to take you to human resources. Look at the camera, it's there.").

Next, Del Villar argues that Hyatt knew or should have known about the harassment. "This standard requires a plaintiff to show that (1) *someone* had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009). At her deposition, however, Del Villar was clear that her July 12, 2018 complaint was the very first time she had mentioned the harassment to any supervisor or human resources representative. Del Villar Tr. 113. When asked to explain how it was that Hyatt "knew about the general discrimination and sexual harassment perpetrated against [her]," as she had alleged in the Complaint, Del Villar stated that she did not "remember having said that" and clarified that "[t]hey knew it *after I told them* about the incident." *Id.* (emphasis added); *see also id*. at 114 ("I did have knowledge that he was harassing me, but not that the

12

hotel knew about it."). Moreover, Del Villar testified that no managers or other supervisors had had the opportunity to observe Francois's harassment, because "when there was a manager present, he would not harass me." *Id.* at 65. Citing Francois's testimony, Del Villar argues that Hyatt should be held responsible because it "had an environment of goofing around and [Francois] did not think he did anything wrong by touching [her] on July 10, 2018." Pl.'s Opp'n 14. But Francois's testimony about "goofing around" referred to "touching" like "high fives," "fist bumps," or a "tap on the shoulder"; he also testified that "there's some parts of their body where you're not going to touch," like "your private area." Francois Tr. 220-25. Finally, Del Villar references a disjointed story involving Francois and another housekeeper named Cynthia. Pl.'s Opp'n 15. But from Francois's deposition testimony, on which Del Villar relies, it appears that it was *Francois* who reported *Cynthia* to human resources, not vice versa. *See* Francois Tr. 280-85. In short, Del Villar offers absolutely no evidence to support her statement that it "is undisputed" that Hyatt's human resources manager "knew of prior complaints made about defendant Francois, and failed to take any disciplinary action against him." Pl.'s Opp'n 16.[4]

Finally, in the alternative, Del Villar attempts in passing to invoke the more plaintiff-friendly standards that apply when an employee alleges sexual harassment by a supervisor. *See* Pl.'s Opp'n 17; *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (finding that, under Title VII and NYSHRL, "[w]hen . . . the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer");

---

[4]   To support this allegation, Del Villar points to the deposition transcript of Michael Grosso, Hyatt's Regional Director of Labor Relations. *See* SOF ¶54 ("What is indisputable is the fact that Seewei Lean, the assistant director of human resources, was aware of these prior incidents and took no further action. (Ex. 2, Grosso Dep. at 79:2-10, 80:16-81:5)"). But, once again, the evidence does not support Del Villar's claim. When asked whether Cynthia made a complaint to Seewai Lean about Francois being in a sexual relationship with an employee, Grosso answered that he was "not aware" of any such complaint. ECF No. 73-3, at 80-81.

13

*Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 928 N.E.2d 1035, 1039 (2010) (finding that the NYCHRL imposes liability on an employer where "the offending employee exercised managerial or supervisory authority" (internal quotation marks omitted)). She does so on the ground that she *believed* Francois was a supervisor because he was a union delegate and Hyatt never affirmatively told her that union delegates were not supervisors. Pl.'s Opp'n 17. But this argument is without merit. "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII [and the NYSHRL] if he or she is empowered by the employer to take tangible employment actions against the victim," *Vance*, 570 U.S. at 424 (2013), an objective standard that the Supreme Court adopted in part because it is "easily workable" and "can be applied without undue difficulty at both the summary judgment stage and at trial," *id.* at 432. The standard under the NYCHRL is similarly objective. *See* N.Y.C. Admin. Code § 8-107(13)(b) (providing that "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent . . . where . . . [t]he employee or agent exercised managerial or supervisory responsibility"). Under these objective standards, it is undisputed that Francois was not Del Villar's supervisor. SOF ¶¶ 13-14; *see also, e.g.*, *Mejia v. City of New York*, No. 17-CV-2696 (NGG) (JO), 2020 WL 2837008, at *16 (E.D.N.Y. May 30, 2020) (finding that a union delegate was not a supervisor).

In sum, Del Villar has failed to demonstrate that Hyatt is liable for Francois's alleged misconduct under Title VII, the NYSHRL, or the NYCHRL. Accordingly, her hostile work environment and sexual harassment claims against Hyatt fail as a matter of law.

## B. Discrimination and Retaliation Claims

The familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), governs retaliation and discrimination claims under both

14

Title VII and the NYSHRL.  *See Summa*, 708 F.3d at 125 (retaliation); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (discrimination).  If a plaintiff establishes a *prima facie* case of discrimination or retaliation, and a defendant proffers a legitimate, nondiscriminatory and nonretaliatory explanation for the adverse employment action, the burden shifts back to the plaintiff to show that "the adverse action would not have occurred in the absence of the retaliatory motive," *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013), or that "the reasons presented were a pretext for discrimination," *DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020) (summary order).  A plaintiff seeking to avoid summary judgment must provide more than speculation to support her burden at the third step in the *McDonnell Douglas* framework.  *See, e.g.*, *Palencar v. New York Power Auth.*, 834 F. App'x 647, 650 (2d Cir. 2020) ("To defeat summary judgment, the plaintiff must produce enough evidence to support a rational finding not only that the employer's nondiscriminatory reasons were false but also that more likely than not discrimination was the real reason for the employment actions." (internal quotation marks omitted)); *Zann Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.  From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.").[5]

---

[5]  Citing the law-of-the-case doctrine, Del Villar also argues that because the Court denied Hyatt's motion to dismiss her discrimination claim, *see* ECF Nos. 29, 43, Hyatt should not be allowed to "take another bite of that apple" and move for summary judgment on that claim.  Pl.'s Opp'n 7; *see also*, *id.* at 8 ("Hyatt is barred from raising that argument under the law of the case doctrine.").  That argument is meritless because it is well established that the law-of-the-case doctrine does "not preclude a district court from granting summary judgment based on *evidence* after denying a motion to dismiss based only on the plaintiff's *allegations*." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (emphases added).

Here, even assuming for the sake of argument that Del Villar can make out a *prima facie* case of discrimination or retaliation,[6] Hyatt has indisputably proffered a legitimate, nondiscriminatory and nonretaliatory explanation for her termination: her use of a racial slur. And Del Villar points to no evidence, circumstantial or otherwise, to show that Hyatt's decision to terminate her was "more likely than not based in whole or in part on discrimination," *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016), or that it "would not have occurred in the absence of the retaliatory motive," *Zann Kwan*, 737 F.3d at 846. In arguing otherwise, Del Villar rests on the fact that the arbitrator found that Hyatt's (later reversed) discharge of her was "unwarranted" under the terms of the collective bargaining agreement (the "CBA"). Pl.'s Opp'n 6-12. But that argument is without merit.

*Russell v. New York University*, No. 15-CV-2185 (GHW), 2017 WL 3049534 (S.D.N.Y. July 17, 2017), *aff'd,* 739 F. App'x 28 (2d Cir. 2018) (summary order), is instructive. In *Russell*, a university professor had been fired for alleged misconduct and filed a grievance with her union.

---

[6] There is at least one good reason to doubt that Del Villar has established a *prima facie* case of retaliation (if not discrimination). Hyatt began investigating Francois's allegation that Del Villar used a racial slur *before* Del Villar engaged in protected activity by filing her hostile work environment and sexual harassment complaint. Indeed, Del Villar made the complaint during her interview with human resources as part of the investigation of Francois's claim. And in her deposition testimony, Del Villar complained that "on the 12th, . . . when I went down to human resources, they already had the suspension letter ready for me," before she was interviewed, and, importantly, before she made her complaint that Francois had sexually harassed her. Del Villar Tr. 109-10. That is, according to Del Villar's testimony, Hyatt had already made the determination, or at the very least was "contemplating" the adverse employment action, before she engaged in protected activity by reporting the hostile work environment. Under similar circumstances, the Supreme Court has held that the temporal proximity between a plaintiff's protected activity and an adverse employment action is "immaterial in light of the fact that [the employer] concededly was contemplating the transfer before it learned of the [protected activity]" because "proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *see also Hall v. Urb. Assembly, Inc.*, No. 19-CV-11572 (JMF), 2022 WL 19708, at *3 (S.D.N.Y. Jan. 3, 2022).

16

The arbitrator found that her misconduct, while "serious," "did not rise to the level that would justify immediate termination" under the terms of the CBA and ordered her reinstated. *Id.* at *33.  In a subsequent federal suit, she "attempt[ed] to create an inference of discriminatory intent by pointing to the union arbitrator's determination that [the plaintiff's misconduct] did not constitute 'just cause' to immediately terminate her." *Id.*  The court, however, found that "[w]hile such an argument might have had merit if the arbitrator had concluded that [the plaintiff] had not engaged in misconduct or that discrimination had played any role in her termination, that is not the case here." *Id.*  Accordingly, the court concluded that "[w]hile the arbitrator's conclusion was certainly authoritative with respect to [the plaintiff's] rights under the CBA, it does not support an inference that she was terminated for discriminatory reasons" and granted summary judgment to the defendant.  *Id.*  *Tomasino v. Mount Sinai Med. Ctr. & Hosp.*, No. 97-CV-5252 (TPG), 2003 WL 1193726 (S.D.N.Y. Mar. 13, 2003), is similarly instructive.  There too, an arbitrator found that the plaintiff's termination had been "too severe a penalty" for the misconduct and ordered her reinstated but "did not indicate that [the defendant's] reason for the discharge was motivated by anything other than the hospital's judgment as to [the plaintiff's] infractions." *Id.* at *13.  Thus, the court found that the arbitration decision was "highly probative of the *absence* of discriminatory intent" and, on that basis, granted summary judgment to the defendant.  *Id.* (emphasis added).

      The same result is warranted here.  As discussed, the arbitrator reinstated Del Villar, but not because he found that her termination had been pretext for discrimination or retaliation or that she had not engaged in the charged conduct.  Instead, the arbitrator concluded that, because of mitigating circumstances (namely, the "way she used the word in the workplace," the fact that she had worked for Hyatt hotels for more than ten years without any disciplinary record or

similar conduct, and "in light of the high level of stress she was working under due to Francois's relentless sexual harassment"), termination was "unwarranted." Del Villar Arb. 4-5. Upon reconsideration, the arbitrator acknowledged the importance of Hyatt's interest in "sending a message that, whatever the circumstances, uttering racial epithets at work will not be tolerated," and imposed a one-month unpaid suspension. Del Villar Supp. Arb. 3. If anything, therefore, the arbitrator's findings are "highly probative of the *absence* of discriminatory intent" because they confirm that Del Villar was disciplined for her use of a charged racial epithet in the workplace. *Tomasino*, 2003 WL 1193726, at *13 (emphasis added). And as a matter of law, Del Villar's use of that epithet provided a legitimate, nondiscriminatory and nonretaliatory reason for Hyatt's adverse employment action.[7] Del Villar may take issue with whether Hyatt's punishment fit her crime. But this Court does "not sit as a super-personnel department that reexamines an entity's business decisions." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (internal quotation marks omitted). Instead, its sole task is to determine whether Del Villar has presented sufficient evidence to establish that Hyatt's discipline was caused by discriminatory or retaliatory motives. Because Del Villar has presented no such evidence, the Court grants summary judgment to Hyatt on both claims under Title VII and the NYSHRL.

Del Villar's discrimination and retaliation claims fail as a matter of law even under the more lenient standards that apply to such claims under the NYCHRL. "Although courts must construe the NYCHRL liberally for the accomplishment of the uniquely broad and remedial purposes thereof, to prove a claim of discrimination under the NYCHRL, a plaintiff still must

---

[7] In fact, failing to discipline Del Villar for her conduct could have exposed Hyatt to a risk of liability to Francois, as the Second Circuit has held that the n-word is uniquely offensive, so abhorrent that "there may well exist circumstances where a single use of the word [n-word] would rise to the level of a hostile work environment." *Albert-Roberts v. GGG Const., LLC*, 542 F. App'x 62, 64 (2d Cir. 2013) (summary order).

show that the complained-of conduct is caused by a discriminatory motive." *Marseille v. Mount Sinai Health Sys.*, No. 18-CV-12136 (VEC), 2021 WL 3475620, at *5 (S.D.N.Y. Aug. 5, 2021). So too, to prevail on a claim of retaliation, the plaintiff must prove that retaliation played at least some part in the employer's decision. *See, e.g.*, *Aiken v. MTA New York City Transit*, No. 18-CV-11756 (GBD) (DF), 2021 WL 6621579, at *15 (S.D.N.Y. Sept. 2, 2021), *report and recommendation adopted* 2021 WL 4481094 (S.D.N.Y. Sept. 29, 2021); *see also Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) ("[S]ummary judgment is appropriate [under the NYCHRL] if the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions" (internal quotation marks omitted)). Here, for the reasons discussed, Del Villar has put forward no evidence, circumstantial or direct, that her termination was based, even in part, on retaliatory or discriminatory motives.

## CONCLUSION

In short, Hyatt's motion for summary judgment must be and is GRANTED. To be clear, that decision is not based on a finding that Del Villar was not subjected to sexual harassment or a hostile work environment while working at Hyatt. Instead, it is based on the fact that Hyatt provided reasonable avenues for Del Villar to report the sexual harassment and, as soon as she did report it, acted promptly to resolve the situation by firing Francois. And it is based on the fact that Del Villar provides no evidence to rebut Hyatt's showing that she was disciplined for a legitimate, non-discriminatory and non-retaliatory reason: her use of the n-word.

That disposes of Del Villar's claims against Hyatt. As noted, however, Francois did not move for summary judgment with respect to her claims against him. Nor is there any basis to grant summary judgment to Francois *sua sponte*. Accordingly, Del Villar's claims against Francois (who is proceeding in this litigation without counsel, that is, *pro se*) remain. Assuming

that Del Villar intends to press those claims, she shall, within **thirty days of the date of this Opinion and Order**, file and serve a pretrial statement in accordance with Paragraph 6(A) of the Court's Individual Rules and Practices in Civil *Pro Se* Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman.  **Within thirty days of service of Del Villar's statement**, Francois shall file and serve a similar statement.  The Court will thereafter schedule trial.

The Clerk of Court is directed to terminate ECF No. 67, to terminate Hyatt as a party, and to mail a copy of this Opinion and Order to Defendant Francois.

SO ORDERED.

Dated: June 28, 2022
       New York, New York

_____
JESSE M. FURMAN
United States District Judge